**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**CURTIS NORTHCUTT and**
**NATALIE NORTHCUTT**                                             **PLAINTIFFS**

    **v.**                         **CASE NO.: 5:21-cv-05178-TLB**

**YOSEF T. BERHE,**
**BISERAT ZEGAI, and**
**WEICHERT WORKFORCE MOBILITY INC.**                    **DEFENDANTS**

## DEFENDANT BERHE, AND DEFENDANT ZEGAI'S ANSWER TO COMPLAINT

Defendant Defendant Berhe, and Defendant Zegai hereby file their Answer toPlaintiffs' Complaint, and state as follows:

### PARTIES, JURISDICTION AND VENUE

1.      This action involves the sale and purchase of certain real property located in Benton County, Arkansas.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that Plaintiffs' claims stem from the sale of certain real property located in Benton County, Arkansas but denies the factual allegations Plaintiffs set forth in this lawsuit.

2.      The Plaintiffs, Curtis Northcutt and Natalie Northcutt (collectively, the "Northcutts"), are husband and wife. The Northcutts are residents of Benton County, Arkansas.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit the allegations in Paragraph 2 of the Complaint.

3.      The Defendants Yosef T. Berhe ("Defendant Berhe") and Biserat Zegai ("Defendant Zegai") (collectively, "Defendants Berhe and Zegai" unless referred to individually) are husband and wife. They currently reside in the state of Ohio. Defendants Berhe and Zegai sold the real property at issue in this case to the Northcutts.

1

**ANSWER**: Defendant Berhe, and Defendant Zegai  admit the allegations in Paragraph 3 of the Complaint.

4.     The Defendant, Weichert Workforce Mobility, Inc. (hereafter "Defendant Weichert"), is a foreign for profit corporation registered to do business in the State of Arkansas. Defendant Weichert's registered agent is the Corporation Service Company, 300 Spring Building Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201.

**ANSWER**: Defendant Berhe nor Defendant Zegai can neither confirm or deny the allegations in Paragraph 4 of the Complaint.

5.     Unless referred to otherwise, Defendant Berhe, Defendant Zegai, and Defendant Weichert are collectively referred to as "Defendants" herein.

**ANSWER**: Paragraph 5 of the Complaint requires no response.

6.     This Court has subject matter jurisdiction and personal jurisdiction over the parties, and venue is proper.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that the United States District Court for the Western District of Arkansas has subject matter jurisdiction and personal jurisdiction over the parties and that venueis proper in this Court.

## ALLEGATIONS OF FACT

7.     This action arises from the sale and purchase of the real property located at 5611 S. Chadwick Drive, Rogers, Arkansas 72758 (the "Property"). The single-family residential home located on the Property shall be referred to herein as the "Home."

**ANSWER**: Defendant Berhe, and Defendant Zegai admit the allegations in Paragraph 7 of the Complaint.

8.     Defendant Weichert assisted and represented Defendants Berhe and Zegai in selling the Property, and negotiated and communicated with potential purchasers, including the Northcutts.

2

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that Weichert, acting as an agent in the role of a non-occupying relocation management company, and under contractual authority from Berhe, Zegai, and Berhe's employer, assisted Berhe and Zegai in selling the Property and negotiated and communicated with potential purchasers, including the Northcutts.

9.    The Northcutts originally submitted an offer to purchase the Property from Defendants Berhe and Defendant Zegai for $549,999.00 (the "Offer"). A true and correct copy of the Offer is attached hereto as Exhibit "A".

**ANSWER**: Defendant Berhe, and Defendant Zegai admit the allegations in Paragraph 9 of the Complaint.

10.    Paragraph 18, Subpart B, of the Offer states as follows:

Buyer hereby requests Seller to provide a written disclosure about the condition of the Property that is true and correct to Seller's knowledge within three (3) business days, after this Real Estate Contract has been signed by Buyer and Seller. If Seller does not provide the disclosure within three (3) business days, Buyer may declare this Real Estate Contract terminated with Buyer and Seller both agreeing to sign the Termination of Contract, with Buyer to receive a refund of the Earnest Money. If Buyer finds the disclosure unacceptable within three (3) business days after receipt of disclosure, this Real Estate Contract may be declared terminated by Buyer, with Buyer and Seller both agreeing to sign the Termination of Contract with Buyer to receive a refund of the Earnest Money. Receipt of this disclosure neither limits nor restricts in any way Buyer's Disclaimer of Reliance set forth in Paragraph 29 of this Real Estate Contract, nor the rights provided to Buyer in Paragraph 16.

*See* Exhibit "A", ¶ 18(B).

**ANSWER**: In answer to the allegations concerning the Offer, Defendant Berhe, and Defendant Zegai refers to the document itself and denies all inconsistent allegations.

11.    A representative of Defendant Weichert executed the Offer on behalf of Defendants Berhe and Zegai.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that Weichert acted as an agent in the role of a non-occupying relocation management company, and signed the Offer.

12.    On June 12, 2021, the Northcutts received a Seller Property Disclosure (the "Disclosure") from Defendants Berhe and Zegai. A true and correct copy of the Disclosure is

3

attached hereto as Exhibit "B."

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that the document speaks for itself.

13.     In the Disclosure, Defendants Berhe and Zegai represented: (i) that there was not and had never been any water intrusion into the home on the Property; (ii) that there was not and had never been any presence of mold in said home; and (iii) that there were not any facts, circumstances, or events that could adversely affect in a material manner the value or desirability of the Property. *See* Exhibit "B."

**ANSWER**: In answer to the allegations concerning the Disclosure, Defendant Berhe, and Defendant Zegai refer to the document itself and denies all inconsistent allegations or any allegation that they knowingly misrepresented any material facts.

14.     Defendants knew that potential purchasers, such as the Northcutts, would be relying on these representations in deciding to purchase the Property.

**ANSWER**: Defendants Berhe and Zegai, are without sufficient information to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and therefore denies the same.

15.     Prior to closing on the Northcutts' purchase of the Property, the Northcutts retained a home inspector to conduct an inspection of the Home.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit the allegations in Paragraph 15 of the Complaint.

16.     The Northcutts' inspector detected elevated moisture levels in multiple areas inside the Home.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that, prior to purchasing the Property, the Northcutts' inspector represented that he detected elevated moisture levels under eight specific windows in the kitchen, dining room, and master bedroom of the Home, however

4

Defendant Berhe, and Defendant Zegai do not possess sufficient information to confirm or deny whether he detected moisture anywhere else in the home; and therefore denies the same..

17.     As a result of these findings, on June 15, 2021, the Northcutts and Defendants entered into a General Addendum to the Real Estate Contract. A true and correct copy of the General Addendum to the Real Estate Contract is attached hereto as Exhibit "C."

**ANSWER**: In answer to the allegations concerning the General Addendum to the Real Estate Contract, Defendant Berhe, and Defendant Zegai refer to the document itself and deny all inconsistent allegations. As to Separate Defendant Weichert, Separate Defendants Berhe and Zegai, Weichert are without sufficient information to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and therefore denies the same.

18.     This General Addendum addressed the elevated moisture levels found in the inspection.

**ANSWER**: In answer to the allegations concerning the General Addendum, Defendant Berhe, and Defendant Zegai refer to the document itself and denies all inconsistent allegations.

19.     In this General Addendum to the Real Estate Contract, Defendants agreed to identify and correct the source of the elevated moisture levels, remove such moisture intrusion from the Home, and confirm that no mold existed under the windows located in the kitchen, dining room/office, and master bedroom of the Home. See Exhibit "C." Again, a representative of Defendant Weichert executed the General Addendum to the Real Estate Contract on behalf of Defendants Berhe and Zegai.

**ANSWER**: In answer to the allegations concerning the General Addendum to the Real Estate Contract, Defendant Berhe, and Defendant Zegai refer to the document itself and denies all inconsistent allegations. With respect to the last sentence in Paragraph 19 of the Complaint, Defendant Berhe, and Defendant Zegai admit that Weichert acting as an agent in the role of a non-

5

occupying relocation management company, signed the General Addendum. With respect to the remaining allegations in Paragraph 19, as to Defendant Berhe, and Defendant Zegai deny the remaining allegations in Paragraph 19.

20.     Furthermore, in the General Addendum, Defendants Berhe and Zegai represented and promised that if mold was found in the Property, Defendants Berhe and Zegai would have it professionally remediated, and the repairs documented. See Exhibit "C."

**ANSWER**: In answer to the allegations concerning the General Addendum, Defendant Berhe, and Defendant Zegai refer to the document itself and denies all inconsistent allegations and denies the allegations as stated.

21.     Prior to closing, Defendants, through their agent, further represented that they would retain Gateway Strategies to dry the walls, properly remediate any mold, and properly seal the exterior brick and caulk areas where moisture was detected. See Email of June 23, 2021, from Jim Brandon, attached hereto as Exhibit "D."

**ANSWER**: In answer to the allegations concerning the Email, Defendant Berhe, and Defendant Zegai refer to the document itself and denies all inconsistent allegations.  As to Defendants Berhe and Zegai, and their real estate agent Jim Brandon, Defendant Berhe, and Defendant Zegai  deny the remaining allegations in Paragraph 21 of the Complaint as stated.

22.     At that time, Defendants Berhe and Zegai, through their agent(s), represented that the cause of this moisture was the irrigation system spraying certain portions of the exterior of the Property.

**ANSWER**: As to Defendants Berhe and Zegai, and their real estate agent Jim Brandon, Berhe and Zegai deny the allegations in Paragraph 22 of the Complaint as stated.

23.     On or about June 26, 2021, Defendant Berhe sent a text message stating: "Positive news, no mold found." Accompanying this representation was a photograph of the master bedroom

showing that baseboards had been removed and fans were drying the area below two windows. A true and correct copy of this text message is below:

**ANSWER**: In answer to the allegations concerning the text message, Defendant Berhe, and Defendant Zegai refer to the document itself and denies all inconsistent allegations.

24.     Prior to closing, Defendants' contractor, Gateway Strategies, also represented to the Northcutts that Defendants had "good news" and that "everything was going to be fine."

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 24 of the Complaint, and therefore deny the same.

25.     Based on the foregoing representations by Defendants and their agents and representatives, the Northcutts agreed to close on their purchase of the Property on June 30, 2021.

**ANSWER**:    As to Defendants Berhe and Zegai, Weichert, they deny the allegations as written.

26.     On that day, the Northcutts paid $549,999.00 to Defendants Berhe and Zegai for the Property.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 26 of the Complaint.

27.     Shortly after moving into the Property, the Northcutts began repainting one of the rooms. While doing so, Curtis Northcutt's hand literally went through the sheetrock because it was completely saturated with water.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and therefore deny the same.

28.     The Northcutts then contacted Gateway Strategies, Defendants' contractor, to have

7

it examine this problem.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegation that Gateway Strategies is Weichert's contractor. Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint, and therefore deny the same.

29.     Gateway Strategies cut open several areas of the walls throughout the Home. This revealed that the insulation was completely saturated with water, that various areas had suffered from substantial previous water intrusion, and that water had been intruding into the Home for an extended period of time.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and therefore deny the same.

30.     This inspection further revealed that certain of the saturated insulation was a different color from the rest of the insulation in the house. There was also a plastic sheet behind the sheetrock in the areas with this different colored insulation.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and therefore deny the same.

31.     Additionally, Defendants represented that they replaced the Home's flooring in the Spring of 2021. To replace any home's flooring, the baseboards must be removed. Defendants Berhe and Zegai would have become aware of the rotting boards at that time because the rotting boards were visible underneath the baseboards when they were removed by Gateway Strategies.

**ANSWER**: As to Defendants Berhre and Zegai, they deny the allegations in Paragraph 31 of the Complaint.

8

32.     These facts indicate that Defendants Berhe and Zegai had personal knowledge of this extensive water intrusion problem, had attempted to work on and remediate the issue, and yet they represented to the Northcutts that the Property never suffered from any water intrusion problems. Also, on information and belief, Defendants Berhe and Zegai painted certain of the interior walls of the Property black in order to conceal the presence of water intrusion from potential purchasers like the Northcutts.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 32 of the Complaint.

33.     Most disturbingly, the boards in these areas have rotted from long-term exposure to water, to the point where the condition of the walls is such that their structural integrity is in doubt.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint, and therefore denies the same.

34.     The below image accurately depicts the rotting deterioration of the boards in the Property due the prolonged water exposure:

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, and therefore deny the same.

35.     Due to these findings, the Northcutts asked Gateway Strategies about the mold test that Defendants represented they obtained prior to closing which allegedly resulted in a negative test for mold. After repeated questioning, Gateway Strategies eventually admitted that a mold test had in fact not been performed.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to

9

form a belief as to the truth of the remaining allegations in Paragraph 35 of the Complaint, and therefore deny the same.

36.     The Northcutts therefore retained a local mold inspection company to test the Home for the presence of Mold. Their tests found significant and hazardous amounts of mold located in multiple areas of the Home. This mold inspector advised the Northcutts to immediately leave the Property and not return because the Home is unsafe to occupy.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint, and therefore deny the same.

37.     Prior to this, Natalie Northcutt and the Northcutts' infant child had developed rashes that are consistent with their exposure to the type of mold found in large and toxic quantitiesin the Home.

**ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and therefore deny the same.

38.     Due to the significant and extensive presence of mold, the Property is uninhabitable. It is dangerous for the Northcutts to occupy the Property.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 38 of the Complaint.

39.     The Northcutts have since learned that the irrigation system that Defendants Berhe and Zegai blamed for the moisture could not have been its cause. The Defendants represented that this sprinkler system was installed during the spring of 2021, yet the extent of the water intrusion and damage to the Property, along with the excessive mold growth, indicates that the water intrusion predates the installation of this sprinkler system. Further, the water damage in the Homeextends to

heights well above where the sprinkler system could reach.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 39 of the Complaint.

40.     In agreeing to the purchase the Property, the Northcutts relied on Defendants' representations that there was no mold in the Home and that the water intrusion was properly remedied.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 40 of the Complaint.

41.     The Northcutts have incurred ongoing damages and out-of-pocket expenses due to their inability to live in the Property and home they purchase from Defendants Berhe and Zegai.

**ANSWER**:  Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 41 of the Complaint.

42.     The Northcutts seek rescission of the purchase of the Property and a full refund of the purchase price as well as the damages outlined herein.

**ANSWER**: Defendant Berhe, and Defendant Zegai admit that Plaintiffs are seeking rescission but denies that Plaintiffsare entitled to that or any other relief.

43.     On August 3, 2021, Plaintiffs made a demand upon the Defendants to rescind their purchase of the Property. The Defendants have not responded to this demand.

**ANSWER**:  Defendant Berhe, and Defendant Zegai admit Plaintiffs made demands but denies  the remaining allegations in Paragraph 43 of the Complaint.

**COUNT I**
**RESCISSION - CONSTRUCTIVE FRAUD AND/OR ACTUAL FRAUD**

44.     Plaintiffs incorporate herein by reference the preceding paragraphs as if set forth word-for-word herein.

**ANSWER**: Paragraph 44 of the Complaint does not require a response.

45.     Defendants Berhe and Zegai represented to the Northcutts in the Disclosure that:

• there was not and had never been any water intrusion into the Homelocated on

   the Property;

• that there was not and had never been any presence of mold in said Home;and

• that there were not any facts, circumstances, or events that could adverselyaffect in a

   material manner the value or desirability of the Property.

*See* Exhibit "C."

**ANSWER**: In answer to the allegations concerning the Disclosure, Defendant Berhe, and Defendant Zegai refer to thedocument itself and deny all inconsistent allegations.

46.     Defendants knew that the Northcutts, as prospective purchasers of the Property, would rely upon these representations contained in the Disclosure in deciding to purchase the Property.

**ANSWER**: Paragraph 46 of the Complaint contains legal conclusions to which no responseis required.  To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph46 of the Complaint.

47.     After the inspection found elevated moisture levels, Defendants further misrepresented that all water intrusion issues at the Home were remedied and that there was no mold in the Home.

**ANSWER**: Paragraph 47 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations inParagraph 47 of the Complaint.

48.     Had the Northcutts known of the severe water intrusion and mold growth in the Home, the Northcutts would not have purchased the Property.

12

**ANSWER**: Paragraph 48 of the Complaint contains legal conclusions to which no response is required.  To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 48 of the Complaint.

49.    These representations were designed to deceive the Northcutts as to the existence of material defects and the conditions of the Property as a whole.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 49 of the Complaint.

50.    These representations were material to the Northcutts' purchase of the Property as such disclosure would have provided Plaintiffs with knowledge of the severe water intrusion and mold presence in the Property.

**ANSWER**: Paragraph 50 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 50 of the Complaint.

51.    The Northcutts reasonably and justifiably relied upon Defendants Berhe and Zegai's misrepresentations in deciding to purchase and close on the Property.

**ANSWER**: Paragraph 51 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 51 of the Complaint.

52.    Defendants Berhe and Zegai made these representations for the purpose of inducing the Northcutts to purchase the Property, as Defendants Berhe and Zegai knew that if they informed the Northcutts of this prior water intrusion, the Northcutts would not have purchased the Property.

**ANSWER**: Paragraph 52 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant

Zegai deny the allegations in Paragraph 52 of the Complaint.

53.     Furthermore, these representations are misleading and/or false because Defendants Berhe and Zegai knew of the extensive water intrusion in the home, knew it should have been disclosed to the Northcutts on the Disclosure, but provided misleading and/or false responses in such Disclosure.

**ANSWER**: Paragraph 53 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 53 of the Complaint.

54.     In the alternative, Defendants Berhe and Zegai had a duty to disclose that the Property suffered from severe prior water intrusion and toxic levels of mold growth, but they failed to fulfill this duty.

**ANSWER**: Paragraph 54 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint, and therefore deny the same.

55.     Defendant Weichert assisted Defendants Berhe and Zegai in making the foregoing misrepresentations and, as Defendants Berhe and Zegai's agent, are liable for these misrepresentations.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 55 of the Complaint.

56.     The existence of severe prior water intrusion to the Property and toxic levels of mold growth constitute a material fact as such damage has a substantial impact on the value of the Property as well as its condition and uninhabitability.

**ANSWER**: Paragraph 56 of the Complaint contains legal conclusions to which no

response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 56 of the Complaint.

57.     Furthermore, Defendants intentionally misrepresented to the Northcutts that the water intrusion had been remedied and that there was no mold in the Property.

**ANSWER**:    Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 57 of the Complaint.

58.     Under Arkansas law, a buyer can rescind the purchase of real property where the seller engages in either constructive fraud or actual fraud.

**ANSWER**:     Paragraph 58 of the Complaint contains a statement of law or legal conclusion to which no response is required.

59.     The foregoing representations made by the Defendants constitute constructive and/or actual fraud.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 59 of the Complaint.

60.     As a result, the Northcutts are entitled to Judgment ordering the rescission of the purchase of the Property and the return of the $549,999.00 that the Northcutts paid for the Property.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 60 of the Complaint.

61.     In addition, such Judgment should order the Defendants to reimburse the Northcutts all amounts they have incurred from their purchase of the Property, including their closing and transaction costs, moving costs, mortgage costs, living expenses, and all other consequential and incidental damages, as such damages are recoverable in a rescission action.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 61 of the Complaint.

62.     Furthermore, pursuant to Ark Code Ann. § 16-22-308, the Northcutts are entitled to a reasonable award of attorneys' fees and costs incurred herein.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 62 of the Complaint.

63.     In addition, Defendants acted in concert and thus are jointly and severally liable pursuant to the Arkansas Civil Justice Reform Act of 2003, Ark Code Ann. § 16-55-205.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 63 of the Complaint.

## COUNT II
## RESCISSION - MUTUAL MISTAKE

64.     The Northcutts incorporate herein by reference the preceding paragraphs as if set forth word-for-word herein.

**ANSWER**: Paragraph 64 of the Complaint does not require a response.

65.     Count II is pled in the alternative to Count I and the relief requested therein.

**ANSWER**: Paragraph 65 of the Complaint does not require a response.

66.     The Northcutts were not aware that the Property suffered from severe water intrusion and mold growth until after they acquired it. In fact, Defendants represented that the water intrusion issues at the Property were remedied and that there was no mold growth in the Property.

**ANSWER**: With respect to the first sentence in Paragraph 66 of the Complaint, Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of those allegations, and therefore denies the same. As to Berhre and Zegai, they deny the remaining allegations in Paragraph 66 of the Complaint, and therefore denies the same.

67.     In addition, there was no reasonable way for the Northcutts to observe mold prior to the purchase of the Property as mold is typically not readily observable and the mold growth in

16

the Home was behind sheetrock and inside the walls.

      **ANSWER**: Defendant Berhe, and Defendant Zegai are without sufficient information to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint, and therefore deny the same.

      68.     The Northcutts further relied in good faith on the Defendants' representations that all water intrusion issues were remedied and that there was no mold growth in the Property.

      **ANSWER**: Paragraph 68 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 68 of the Complaint.

      69.     The Northcutts would not have entered into the Contract but for their understanding that all water intrusion issues were resolved and that there was no mold growth in the Property.

      **ANSWER**: Paragraph 69 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 69 of the Complaint[1].

      70.     In the event that it is proven that Defendants likewise understood that the Property's water intrusion issues were resolved and that there was no mold in the Property, the sale of the Property should be rescinded due to the presence of a mutual mistake among the parties.

      **ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 70 of the Complaint.

---

[1] At Footnote 1, Paragraph 69 of the Complaint, the Northcutts state: "The Offer, Disclosure, and General Addendum to the Real Estate Contract are collectively referred to in this Count II and in Count III as the 'Contract.'" The Northcutts, however, attach only one of the disclosure statements to their Complaint—the disclosure statement executed by Separate Defendants Berhe and Zegai. The Northcutts omit the disclosure statement executed by Separate Defendant Weichert. Attached as Exhibit 1 to this Answer is the Weichert No Representation Disclosure Statement, executed by Weichert and the Northcutts to expressly and conspicuously acknowledge that Weichert made absolutely no representations as to the condition of the Property. The Weichert No Representation Disclosure Statement is also a part of the Contract and is incorporated herein by reference.

71.     Therefore, the Northcutts are entitled to Judgment ordering the rescission of the purchase of the Property and the return of the $549,999.00 that the Northcutts paid for the Property.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 71 of the Complaint.

72.     In addition, such Judgment should order the Defendants to reimburse the Northcutts all amounts they have incurred from their purchase of the Property, including their closing and transaction costs, moving costs, mortgage costs, living expenses, and all other consequential and incidental damages, as such damages are recoverable in a rescission action.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 72 of the Complaint.

73.     Furthermore, pursuant to Ark Code Ann. § 16-22-308, the Northcutts are entitled to a reasonable award of attorneys' fees and costs incurred herein.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 73 of the Complaint.

**COUNT III**
**<u>DISGORGEMENT – FRAUD IN THE INDUCEMENT</u>**

74.     The Northcutts incorporate herein by reference the preceding paragraphs as if set forth word-for-word herein.

**ANSWER**: Paragraph 74 of the Complaint does not require a response.

75.     Count III is pled in the alternative to Counts I and II and the relief requested therein.

**ANSWER**: Paragraph 75 of the Complaint does not require a response.

76.     Defendants made false representations in the Disclosure, specifically that:

• there was not and had never been any water intrusion into the Home on the Property;

• that there was not and had never been any presence of mold in said Home; and

18

- that there were not any facts, circumstances, or events that could adversely affect ina material manner the value or desirability of the Property.

*See* Exhibit "C."

**ANSWER**: In answer to the allegations concerning the Disclosure, Defendant Berhe, and Defendant Zegai refer to thedocument itself and denies all inconsistent allegations. The remaining allegations in Paragraph 76 of the Complaint contain legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the remaining allegations in Paragraph 76 of the Complaint.

77.    The existence of severe water intrusion and toxic levels of mold in the  Home on the Property constitutes a material fact as the Northcutts would not have purchased the Property if these facts had been accurately disclosed by Defendants.

**ANSWER**: Paragraph 77 of the Complaint contains legal conclusions to which no response is required. To the extent a response may be required, Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 77 of the Complaint.

78.    Defendants knew that their misrepresentations as to the severe water intrusion and toxic mold growth at the Property were false when the misrepresentations were made.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 78 of the Complaint.

79.    Defendants made these misrepresentations for the purpose of inducing the Northcutts to enter into the Contract, as Defendants knew that if the Northcutts were informed of the severe water intrusion and toxic levels of mold growth, they would not have agreed to purchase the Property.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 79 of the Complaint.

19

80.     The Northcutts justifiably relied upon Defendants' misrepresentations by agreeing to purchase the Property.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 80 of the Complaint.

81.     The Northcutts would not have purchased the Property but for Defendants' false misrepresentations.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 81 of the Complaint.

82.     As a result of Defendants' fraudulent actions, the Defendants should be ordered to disgorge all monies they received from the Northcutts.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 82 of the Complaint.

83. Therefore, as an alternative to rescission sought in Counts I and II, Judgment should be awarded in favor of the Northcutts and against Defendants in the amount of the purchase price the Northcutts paid for the Property - $549,000.00.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 83 of the Complaint.

84.     In addition, Defendants acted in concert and thus are jointly and severally liable pursuant to the Arkansas Civil Justice Reform Act of 2003, *Ark Code Ann. § 16-55-205*.

**ANSWER**: Defendant Berhe, and Defendant Zegai deny the allegations in Paragraph 84 of the Complaint.

## <u>RESERVATION OF RIGHTS</u>

85.     The Northcutts reserve the right to assert additional claims in this matter.

**ANSWER**: Paragraph 85 of the Complaint does not require a response.

20

## RELIEF SOUGHT

86.     Weichert denies that Plaintiffs are entitled to the relief requested in the WHEREFORE clause of the Complaint.

87.     Defendant Berhe, and Defendant Zegai deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

88.     Plaintiffs have failed to state a claim against Defendant Berhe, and Defendant Zegai upon which relief can begranted.

89.     Plaintiffs have failed to join a necessary and/or indispensable party.

90.     Defendant Berhe, and Defendant Zegai expressly assert the affirmative defense of election of remedies.

91.     Plaintiffs have expressly and/or impliedly waived any right to seek the relief requested herein.

92.     Plaintiffs' claims are barred by the doctrines of unclean hands, laches, and/or estoppel.

93.     Plaintiffs unequivocally disclaimed any reliance on any purported representation, disclosure, warranty, or statement of Defendant Berhe, and Defendant Zegai.

94.     Defendant Berhe, and Defendant Zegai made no misrepresentations to Plaintiffs regarding the quality and/orcondition of the subject property.

95.     The damages Plaintiffs seek are not recoverable under Arkansas law.

96.     The Complaint fails to allege the correct measure of damages available under Arkansas law.

21

97.     Defendant Berhe, and Defendant Zegai reserve the right to amend this Answer, the right to add additional affirmative defenses, and the right to assert counterclaims/cross-claims or third-party claims.

WHEREFORE, Defendant Defendant Berhe, and Defendant Zegai pray that the Complaint bedismissed, for an award of its attorney's fees and costs, and for all other relief to which it may be entitled.

Respectfully submitted,

By: /s/ _____

By: /s/ _____

## Defendant Contact Info:

|  | Yosef Berhe | Biserat Zegai |
|---|---|---|
| Address: | 400 Park Ave. Apt. #319 Beachwood, OH 44122 | 400 Park Ave. Apt #319 Beachwood, OH 44122 |
| email: | yosef.berhe@gmail.com | Biserat.zegai@hotmail.com |
| Cell: | 302-222-1827 | 302-388-0563 |

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a true and complete copy of the foregoing document was served on this  day of December 1, 2021, via the first-class mail upon all registered attorneys of record.

By: <u>/s/</u>

By: <u>/s/</u>