**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**CURTIS NORTHCUTT and**
**NATALIE NORTHCUTT**                                                    **PLAINTIFFS**

    **v.**                                **CASE NO.: 5:21-cv-05178-TLB**

**YOSEF T. BERHE,**
**BISERAT ZEGAI, and**
**WEICHERT WORKFORCE MOBILITY INC.**                      **DEFENDANTS**

**SEPARATE DEFENDANT WEICHERT WORKFORCE MOBILITY INC.'S**
**MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR**
**<u>JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD ......................................................................................... 3

III. ARGUMENT ...................................................................................................... 5

   A.  Weichert's Disclosures, which are part of the pleadings, defeat Plaintiffs' claims against Weichert. ....................................................................................................... 6

      1.  Relevant Background ................................................................................. 6

      2.  Weichert's Disclosures are integral to Plaintiffs' claims against Weichert and are embraced by the pleadings. ..................................................................... 10

      3.  Weichert's Disclosures were unequivocal that Weichert was making "No Representations" about the Home's condition or the accuracy or completeness of Berhe and Zegai's Disclosures ...................................................................... 12

   B.  Plaintiffs' complaint fails to state claims upon which relief can be granted. ................... 13

      1.  All claims: Plaintiffs' group allegations and generic references to unspecified parties are insufficient to state a claim against Weichert. ............................... 13

      2.  Fraud ......................................................................................................... 16

         a.  Plaintiffs do not allege that Weichert made a false representation of any fact. ........ 17

         b.  Plaintiffs do not allege that Weichert, as an agent, made any *independent* representations beyond those authorized by Berhe and Zegai. .......................... 19

         c.  Plaintiffs' failure to allege how Weichert "assisted" Berhe and Zegai in making the purported misrepresentations violates the Rule 9(b) pleading standard. ........................... 21

      3.  Mutual Mistake ......................................................................................... 22

         a.  The purported mistake could not have been material to the inducement to the making of the contract. ..................................................................................... 23

         b.  Weichert could not have been mistaken about a material fact because it disclaimed all knowledge about the Home's condition. .................................................... 25

IV.  CONCLUSION ................................................................................................ 25

Separate Defendant Weichert Workforce Mobility Inc. ("Weichert") submits the following Memorandum Brief in Support of Weichert's Motion for Judgment on the Pleadings:

## I.      INTRODUCTION

This case is about fraudulent representations allegedly made by Defendants Yosef Berhe and Biserat Zegai (collectively, "Berhe and Zegai") when they sold their home to Plaintiffs. Plaintiffs sued Weichert as an afterthought—or perhaps a deep pocket who might be willing to pay something to escape the cost of litigation. Weichert made no representations, period. Plaintiffs try to shoehorn Weichert into their complaint with a handful of vague, collective allegations, but a fair examination of the pleadings reveals that Weichert made no representations—and Plaintiffs do not allege that it did, certainly not to the pleading standard mandated by Fed. R. Civ. P. 9(b).

In June of this year, Plaintiffs purchased a home previously owned by Berhe and Zegai. Weichert executed the contract (the "Real Estate Contract" or the "Contract") on behalf of Berhe and Zegai. Weichert is a relocation management company devoted to helping companies relocate their executives and other talent.[1] When one of Weichert's clients needs to relocate an employee, Weichert provides a variety of services to help the company facilitate the employee's relocation, including assistance with the sale of the employee's home. In this case, Weichert worked with Berhe's employer to help facilitate Berhe and Zegai's relocation from Rogers, Arkansas to Ohio.

After the parties signed the Contract, Plaintiffs hired an inspector who discovered elevated moisture levels under eight windows in three rooms of the Home. Plaintiffs asked that Berhe and Zegai address these issues, which Berhe and Zegai agreed to do. The complaint does not allege that Plaintiffs re-inspected the home after the repairs were made. Instead, according to the complaint, Plaintiffs closed on their purchase of the Home 18 days after submitting their initial

---

[1]   GLOBAL    RELOCATION    SERVICES:    WEICHERT    WORKFORCE    MOBILITY, https://www.weichertworkforcemobility.com (last visited Dec. 12, 2021).

offer, and 15 days after the parties executed the Contract. After they moved into the Home, Plaintiffs apparently discovered additional water issues, as well as mold, and this lawsuit followed shortly thereafter.

Plaintiffs claim that the defendants, including Weichert, hid the ball from them by intentionally misrepresenting the condition of Berhe and Zegai's home. Ironically—and tellingly—Plaintiffs' complaint hides the ball.  Although Plaintiffs' claims are based on the written disclosures from the three separate defendants, Plaintiffs attach to their complaint the written disclosures of only two of the defendants—Berhe and Zegai. Plaintiffs deliberately omit from their complaint the written disclosures of the third defendant, Weichert. The reason for Plaintiffs' omission cannot be clearer: Weichert's disclosures make unquestionably clear that Weichert should not be a defendant in this lawsuit.

In its written disclosures, which both Plaintiffs signed and initialed, Weichert unequivocally represented to Plaintiffs that it had no knowledge of the Home's condition, and that Weichert could not attest to the veracity of Berhe and Zegai's disclosures. Weichert's written disclosures are an essential part of the parties' contract. Plaintiffs expressly acknowledge Weichert's complete disclaimer of representations by initialing each disclaimer of representation, including Weichert's disclaimer of any knowledge or representation regarding water intrusion or mold.  This alone is fatal to Plaintiffs' claims against Weichert.  But, even putting aside Weichert's disclosures, the complaint fails to allege a sufficient factual basis to state a claim for fraud or mutual mistake against Weichert (because no such facts exist).  For the reasons set forth more fully below, the Court should grant Weichert's motion for judgment on the pleadings and dismiss the complaint against Weichert in its entirety pursuant to Fed. R. Civ. P. 12(c).

## II.        LEGAL STANDARD

**Rule 12(c).** Whether a plaintiff has failed to state a claim upon which relief can be granted may properly be raised in a Rule 12(c) motion for judgment on the pleadings. *See Butterball, LLC v. Atkinson*, Case No. 3:15-CV-3050-TLB, 2016 WL 5886891, at *2 (W.D. Ark. Oct. 7, 2016) (citing Fed. R. Civ. P. 12(h)(2)(B)). The court reviews a Rule 12(c) motion under the same legal standard that governs a Rule 12(b)(6) motion to dismiss. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint ordinarily need only provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  The court accepts all factual allegations as true, construes them in a light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  The complaint must, at a minimum, contain enough factual matter to show that a claim for relief is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court does not accept mere labels or legal conclusions, and the complaint must do more than tender "naked assertions devoid of further factual enhancement." *See Butterball, LLC*, 2016 WL 5886891 at *1 (citing *Iqbal*, 556 U.S. at 678).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**Rule 9(b).** However, in cases for *fraud or mistake*, a far more demanding pleading standard applies. *See* Fed. R. Civ. P. 9(b). This heightened standard serves important purposes:

> First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997)).  In such a case, the complaint "must state with particularity the circumstances constituting fraud or mistake." *Butterball, LLC v. Atkinson*, 2016 WL 5886891 at *2. In the Eighth Circuit, Rule 9(b) requires a plaintiff "to plead the who, what, when, where and how: the first paragraph of any newspaper story." *Burnett v. Am. Int'l Indus.*, Case No. 3:20-CV-3046-TLB, 2020 WL 6276146, at *2 (W.D. Ark. Oct. 26, 2020) (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)).

**Collective allegations are insufficient.** In cases where multiple defendants are allegedly involved in the purported fraud, "it is especially important that the fraud be particularized as to each one of them." *Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161, 168 (E.D.N.Y. 2015) (citation omitted). In the Eighth Circuit, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quoting *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018)). It is not enough to attribute allegedly false statements to "defendants" generally. *See Trooien v. Mansour*, 608 F.3d 1020, 1030 (8th Cir. 2010) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)). Indeed, the Eighth Circuit has made clear that a complaint fails to satisfy Rule 9(b) where a defendant is "left to guess" who is responsible for the alleged fraud.  *Burnett*, 2020 WL 6276146 at *2 (citing *Trooien*, 608 F.3d at 1030).

To that end, it is not enough that a complaint attribute purportedly "false representations and conduct to multiple defendants generally, in a group pleading fashion." *Streambend Props., LLC*, 781 F.3d at 1013. Rather, where multiple defendants are asked to respond to allegations of

4

fraud, the complaint must inform each defendant of the nature of his alleged participation in the fraud. *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 899 (D. Minn. 2013) (noting Rule 9(b) does not "allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant" (citation omitted)). In short, the complaint must connect allegations of fraud to each individual defendant. *First Dakota Nat'l Bank v. Ruba*, 412 F. Supp. 3d 1153, (D.S.D. 2019) ("Typically allegations of fraud against groups of defendants are not sufficient without identifying how each individual defendant committed fraud.").

## III.    ARGUMENT

Plaintiffs' complaint asserts four causes of action (in three counts) against Weichert: Count 1 – actual fraud and/or constructive fraud; Count 2 – mutual mistake; and Count 3 – fraud in the inducement. Based on Weichert's understanding of the complaint, Plaintiffs have alleged two categories of false representations: (1) pre-inspection misrepresentations; and (2) post-inspection misrepresentations. The pre-inspection misrepresentations derive from Berhe and Zegai's Disclosures. (Compl., Doc. 4, ¶¶ 45, 76). The post-inspection misrepresentation is the allegedly false representation that "all water intrusion issues were remedied and that there was no mold in the Home." (*Id.* at ¶¶ 47, 57).

Each of Plaintiffs' claims against Weichert are premised on one common theme: Weichert's knowledge about the Home's condition. Specifically, Plaintiffs allege that Weichert made a misrepresentation about the Home's condition, assisted Berhe and Zegai in making a similar misrepresentation, or was mistaken that certain repairs had been made to the Home. Plaintiffs' claims should be dismissed for a myriad of reasons. This brief will discuss those reasons in two main sections, each of which standing alone presents grounds for dismissing the claims against Weichert. In the first section, Weichert outlines why the Court should consider Weichert's

Disclosures in deciding this motion, and then explains why those disclosures are fatal to Plaintiffs' claims against Weichert. In the second section, Weichert identifies and explains the many legal inadequacies related to Plaintiffs' allegations and claims and how Plaintiffs' sparse allegations against Weichert do not support a plausible claim for relief, without reliance on Weichert's disclosures.

### A.  WEICHERT'S DISCLOSURES, WHICH ARE PART OF THE PLEADINGS, DEFEAT PLAINTIFFS' CLAIMS AGAINST WEICHERT.

In its written disclosures under the parties' Contract, Weichert disclaimed any knowledge of the Home's condition or the accuracy of the written disclosures completed by Berhe and Zegai. Although Plaintiffs attach to their complaint the core Real Estate Contract, signed by a Weichert representative, the General Addendum, also signed by a Weichert representative, and Berhe and Zegai's written disclosures, Plaintiffs chose not to include Weichert's written disclosures. Nonetheless, as explained in Section III(A)(2), *infra*, the Court can, and should, consider Weichert's written disclosures for purposes of this motion because the disclosures are integral to Plaintiffs' claims against Weichert, and the disclosures are part of the underlying Contract.

### 1.  Relevant Background[2]

Through the parties' Contract, Plaintiffs requested that the seller provide a written disclosure "about the condition of the Property that is true and correct to Seller's knowledge." (Compl., Doc. 4, ¶¶ 9-10). If the seller failed to provide Plaintiffs with the disclosures in a timely manner, Plaintiffs could "declare [the] Real Estate Contract terminated." (*Id.* at ¶ 10).

The seller's disclosures were important for a number of reasons. For example, the Real Estate Contract included the following "Buyer's Disclaimer of Reliance," in all caps and in bold:

---

[2] This background includes excerpts from Weichert's Disclosures. As explained in the next section, although not attached to Plaintiffs' complaint, the Court can and should consider these excerpts and the document itself for purposes of this motion.

**A. BUYER CERTIFIES BUYER WILL PERSONALLY INSPECT OR HAVE A REPRESENTATIVE INSPECT THE PROPERTY AS FULLY AS DESIRED PRIOR TO CLOSING. BUYER CERTIFIES <u>BUYER</u> HAS NOT AND <u>WILL NOT RELY ON ANY WARRANTIES, REPRESENTATIONS</u>, OR STATEMENTS OF SELLER, LISTING FIRM, OR ANY AGENT, INDEPENDENT CONTRACTOR, OR EMPLOYEE ASSOCIATED WITH THOSE ENTITIES, OR INFORMATION FROM MULTIPLE LISTING SERVICES OR OTHER WEBSITES <u>REGARDING</u> MINERAL RIGHTS, YEAR BUILT, SIZE (INCLUDING WITHOUT LIMITATION SQUARE FEET IN IMPROVEMENTS LOCATED ON THE PROPERTY), QUALITY, VALUE <u>OR CONDITION OF THE PROPERTY, INCLUDING WITHOUT LIMITATION ALL IMPROVEMENTS</u>, APPLIANCES, PLUMBING, ELECTRICAL OR MECHANICAL SYSTEMS. <u>HOWEVER, BUYER MAY RELY UPON ANY WRITTEN DISCLOSURES PROVIDED BY SELLER</u>.**

(Compl., Doc. 4, Ex. A, p. 11) (underline added). Thus, under the Contract, Plaintiffs could not rely on any warranties or representations of the seller, *except those in the seller's written disclosures*.

In accordance with the parties' Contract, Separate Defendants Berhe and Zegai completed a "Seller Property Disclosure" form, which Plaintiffs received and signed ("Behre and Zegai's Disclosures"). (Compl., Doc. 4, Ex. B). Berhe and Zegai, as the owners and occupants of the Home, made representations about their personal knowledge regarding the Home's condition. Weichert, as the non-occupying relocation company, also provided written disclosures to Plaintiffs, but its written disclosures were much different. *See* "Weichert 'No Representation' Disclosure Statement" ("Weichert's Disclosures") attached as Exhibit 1 to Weichert's Answer. (Doc. 13-1). It made clear that Weichert "never occupied the property" and therefore could make no representation as to the Home's condition. (*Id.*). With respect to the seller's disclosures referenced in the Real Estate Contract, Weichert's Disclosures provided the following:

> As a condition of Weichert's purchase of the property from Weichert Seller, Weichert obtained the attached Seller Disclosure Statement with its

appended reports (if any) from Weichert Seller.[3] **PLEASE NOTE:** since Weichert has never occupied the property and cannot verify whether all the information provided in the attached "Weichert Seller Disclosure Statement" is accurate or complete. Weichert can only provide Buyer with this "Weichert No-Representation Disclosure Statement" (together with any appended reports, concerning the condition of the property. This "Weichert No Representation Disclosure Statement" is not a statement or representation made by Weichert with respect to the Property, and therefore Weichert makes no warranties or representation with respect to the Property or with respect to the completeness or accuracy of the "Weichert Seller Disclosure Statement" (and any appended reports. Weichert is therefore providing both (1) The "Weichert Seller Disclosure Statement" with (any appended reports; and (2) The "Weichert No Representation Disclosure Statement (with any appended reports) to a prospective Buyer for whatever informational purposes there documents (with any appended reports) may or may not have. Neither of these two (2) documents (with any appended reports) shall be deemed to be any sort of warranty from Weichert or Weichert Seller to a prospective Buyer regarding the Property, and neither of these two (2) documents (with any appended reports) is a substitute for any independent inspection of the property by a prospective Buyer.

(Doc. 13-1, p. 1) (emphasis in original).

Weichert's Disclosures then devote five pages to explaining that Weichert was not making any representation as to any condition of the Home. (Doc. 13-1, pp. 3-7). Notably, when asked whether Weichert was "aware of any present or past water problems and/or dampness conditions anywhere in the house," Weichert responded with an "X" signifying NO REPRESENTATION. (*Id.* at p. 3). Similarly, when asked whether Weichert was "aware of any present or past mold problem[s] in this property," Weichert responded with an "X" signifying NO REPRESENTATION. (*Id.* at p. 3). The written disclosure is clear: Weichert was not representing that there was no history of moisture or mold in the Home, because it did not know. Instead, Weichert was affirming that it was not making and could not make a representation one way or the other.

---

[3] The document defines "Weichert Seller" as "Yosef Berhe and Biserat Zegai." (*Id.*). Thus, all reference to "Weichert Seller Disclosure Statement" is referring to Berhe and Zegai's Disclosures.

At the end of the document, Weichert's Disclosures included a final disclaimer:

1. Because Weichert has never occupied the Property, Weichert makes no warranties or representations with respect to any positive or negative statements or omissions with respect to the condition of the Property contained in the reports and/or additional information identified in Paragraph 20.A. or 20.B. hereof or in the attached "Weichert Seller Disclosure Statement" and its appended report(s). Such reports, additional information, and the attached "Weichert Seller Disclosure Statement" and its appended report(s) were obtained by Weichert to help Weichert evaluate the Property, or were otherwise made known to Weichert. They are provided to Buyer for whatever informational purposes they may or may not have. Buyer should not rely upon any positive or negative statements or omissions contained in such report(s) or additional information, or treat such report(s) or additional information as any form of warranty by Weichert or Weichert Seller as to the condition of the Property.  It is recommended that Buyer would obtain independent professional advice and/or inspections of the Property.

2. In the event that any repair(s) of the Property are negotiated between Weichert and Buyer to be performed by Weichert (whether such repairs relate to defects disclosed in any of the reports, disclosures, or additional information identified in Paragraph 20.A. or 20.B. hereof, or in the attached "Weichert No Representation Disclosure Statement and its appended report(s) or otherwise), it is understood that the performance of such repairs shall <u>NOT</u> be a representation[] or warranty as to the conditions of the property prior to or upon completion of such repair(s), or that such defect(s) has/have been cured, irrespective of any oral or written statements made by Weichert or a Weichert representative indicating, or tending to indicate, that the defect(s) has/have been "repaired", "fixed", "cured" or otherwise completed in a workmanlike manner. The performance of such repair(s), and any statements relating to the efficacy or duration or effectiveness thereof in curing any defect(s) shall <u>NOT</u> be deemed to be any sort of warranty from Weichert regarding the Property, and is <u>NOT</u> to be deemed a substitute for an independent re-inspection of the Property by a prospective Buyer subsequent to the performance of such repair(s).  In the event that third party warranties are obtained as part or result of the repair(s), such warranties are NOT warranties by Weichert as to the condition of the Property, and the prospective buyer must look to the third party warranties for any enforcement thereof.

(Doc. 13-1, p. 8). Plaintiffs initialed each page of Weichert's Disclosures and executed the document on June 14, 2021. (*Id.*).

### 2.   Weichert's Disclosures are integral to Plaintiffs' claims against Weichert and are embraced by the pleadings.

When resolving a motion for judgment on the pleadings, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Mint Solar, LLC v. Sam's West, Inc.*, Case No. 5:19-cv-05167, 2019 WL 6329639, at *2 (W.D. Ark. Nov. 22, 2019) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012)); *see also Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013). In cases involving a contract, "the court may examine the contract documents in deciding a motion to dismiss." *Mint Solar, LLC*, 2019 WL 6329639 at *2 (citing *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)); *see also Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) ("The contracts upon which a claim rests are evidently embraced by the pleadings." (cleaned up) (citation omitted)). Additionally, courts in the Eighth Circuit are willing to consider exhibits attached to the answer when ruling on a motion for judgment on the pleadings where a party does not dispute the authenticity of the document. *Cortec Corporation v. 572415 B.C. LTD*, Case No. 19-CV-553, 2020 WL 206380, at *2 (D. Minn. Jan. 14, 2020) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion." (cleaned up)).

Here, the Court should find that Weichert's Disclosures may be considered on this motion for two basic reasons. First, Weichert's Disclosures are integral to Plaintiffs' claims against Weichert. Second, Weichert's Disclosures are part of the underlying Real Estate Contract and are evidently embraced by the pleadings.

*First*, Weichert's Disclosures are integral to Plaintiffs' claims against Weichert. Plaintiffs are suing two separate groups of defendants: (1) Separate Defendants Berhe and Zegai; and (2) Separate Defendant Weichert. Plaintiffs' claims concern purported false representations by each defendant regarding the Home's condition. In the Real Estate Contract, Plaintiffs requested that the seller provide written disclosures about the Home's condition. (Compl., Doc. 4, Ex. A, p. 8). The Contract, which Plaintiffs attached to their Complaint, therefore incorporated each seller's disclosures by reference. Additionally, Plaintiffs expressly agreed that they would rely on no representation of the seller except the representations in the seller's written disclosures. (*Id.* at p. 11). The seller's written disclosures are therefore integral to any claim premised on purported misrepresentations about the Home's condition. Indeed, Plaintiffs attached to their complaint and relied on Berhe and Zegai's Disclosures to support their claims against Berhe and Zegai. Yet Plaintiffs fail to even mention Weichert's Disclosures (a fact that seems inconceivable in a case where Plaintiffs are suing all defendants for the same fraud). In much the same way that Berhe and Zegai's Disclosures are integral to Plaintiffs' claims against Berhe and Zegai, Weichert's Disclosures are certainly integral to Plaintiffs' claims against Weichert.

*Second*, the Court should further find that it may consider Weichert's Disclosures on this motion because they are part of the Real Estate Contract and are therefore embraced by the pleadings. In their complaint, Plaintiffs define the "Contract" as the Offer, Berhe and Zegai's Disclosures, and the General Addendum. (*See* Compl. ¶ 69 n.1).  If Berhe and Zegai's Disclosures are part of the "Contract," as Plaintiffs concede and allege, then there appears little question that Weichert's Disclosures, too, are part of it. That Weichert's Disclosures unequivocally disclaim any knowledge of the Home's condition surely does not render them any less part of the Contract than Berhe and Zegai's Disclosures.

Plaintiffs have seemingly engaged in an exercise of cherry-picking which portions of the Contract are most favorable to their claims (or, that do not directly defeat their claims) and attaching only those documents to their complaint. The reason behind Plaintiffs' desire to avoid Weichert's Disclosures, even at the pleading stage, is obvious—it simply leaves no room for doubt that Plaintiffs' claims against Weichert are objectively baseless and patently false. But gamesmanship should not forestall this Court's ability to consider the document on this motion and to provide timely relief to Weichert.  Because Weichert's Disclosures are integral to Plaintiffs' claims against Weichert, and because the disclosures are part of the Real Estate Contract, the Court should consider them for purposes of this motion.

### 3.  Weichert's Disclosures were unequivocal that Weichert was making "No Representations" about the Home's condition or the accuracy or completeness of Berhe and Zegai's Disclosures.

Weichert's Disclosures leave no doubt that the claims against Weichert are completely unfounded. Plaintiffs' claims against Weichert are twofold: (1) that it misrepresented (or was mistaken about) the Home's condition; or (2) that it assisted Berhe and Zegai in making misrepresentations about the Home's condition.  However, in its disclosures Weichert made crystal clear to Plaintiffs that it never occupied the Home and that it could not make any representation or warranty about the Home's condition. Weichert further explained that it likewise could not make a representation or warranty about the accuracy of Berhe and Zegai's Disclosures. In fact, Weichert encouraged Plaintiffs to "obtain independent professional advice and/or inspection" rather than simply relying on the disclosures. Weichert's Disclosures also devote five pages to exhaustively disclaiming any representation about any condition of the Home, including whether the Home had a history of moisture problems or mold. And finally, to eliminate any doubt, at the end of its disclosures, Weichert once again disclaimed any knowledge of the Home's condition, both before and after any necessary repairs. Based on these facts in the Contract, it is clear that Weichert made

no representation about the Home's condition, and that it disclaimed any knowledge of such. Plaintiffs cannot claim ignorance of these facts—they initialed each page and signed their acknowledgement of Weichert's unfamiliarity with the Home and its condition. The Court should therefore grant Weichert's motion for judgment on the pleadings and dismiss the complaint against Weichert.

### B.  PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Even if the Court were to look past Weichert's Disclosures, Plaintiffs' complaint should still be dismissed for failure to state a claim upon which relief can be granted. The remainder of this brief will proceed in three parts. First, it will explain why Plaintiffs' group allegations fail to adequately state a claim against Weichert. Second, it will address why Plaintiffs' fraud claims against Weichert must be dismissed as a matter of law. And finally, this brief will explain why Plaintiffs' allegations related to its claim for mutual mistake are insufficient to support a claim for rescission based on a purported mutual mistake.

### 1.  <u>All claims</u>: Plaintiffs' group allegations and generic references to unspecified parties are insufficient to state a claim against Weichert.

Plaintiffs' complaint asserts four separate causes of action against three parties. All claims against Weichert should be dismissed under *Twombly/Iqbal* for failure to state a plausible claim. Crucially, other than party identification, the complaint specifically refers to Weichert only *four* times:

- "Defendant Weichert assisted and represented Defendants Berhe and Zegai in selling the Property, and negotiated and communicated with potential purchasers, including the Northcutts."  (¶ 8).

- "A representative of Defendant Weichert executed the Offer on behalf of Defendants Berhe and Zegai." (¶ 11).

- "Again, a representative of Weichert executed the General Addendum to the Real Estate Contract on behalf of Defendants Berhe and Zegai." (¶ 19).

- "Defendant Weichert assisted Defendants Berhe and Zegai in making the foregoing misrepresentations and, as Defendants Berhe and Zegai's agent, are liable for these misrepresentations." (¶ 55).

Of these four references, three contain factual allegations, and the final one is a legal conclusion, which must be disregarded. *See Butterball, LLC*, 2016 WL 5886891 at *1. To be clear, the complaint contains only *three* factual allegations *directed specifically at Weichert*. Every other allegation that arguably relates to Weichert is alleged vaguely against unspecified "Defendants."

These four vague, passing references to Weichert run opposite the legal requirement that Plaintiffs offer well-pleaded facts showing how a particular defendant engaged in wrongdoing. Plaintiffs' repeated use of "Defendants," rather than plainly attributing actions directly to Weichert, requires guesswork and speculation to have meaning. In fact, many of the allegations are vague, confusing, contradictory, and not supported by any factual foundation.

For example, in support of their fraud claim in Count 1, Plaintiffs claim that "Berhe and Zegai" made certain representations in the Disclosure. (¶¶ 13, 45). Yet, in support of their fraud claim in Count 3, Plaintiffs allege that "Defendants" made certain false representations in the same Disclosure. (¶ 76). To compound this confusion, Plaintiffs separately claim that "Defendants" "represented that they replaced the Home's flooring in the Spring of 2021" in the Disclosure. (¶ 31). The reference to "Defendants" in the allegation could not possibly be intended to include Weichert since, as Plaintiffs know, Weichert was a non-occupying relocation company who had no involvement in replacing flooring. Plaintiffs' use of "Defendants" in such contradictory fashion makes these allegations both confusing and implausible.

Plaintiffs also allege the following in support of a post-inspection misrepresentation:

- "In this General Addendum to the Real Estate Contract, Defendants agreed to identify and correct the source of the elevated moisture levels, remove

14

such moisture intrusion from the Home, and confirm that no mold existed under the windows located in the kitchen, dining room/office, and master bedroom of the Home." (¶ 19).

- "[I]n the General Addendum, Defendants Berhe and Zegai represented and promised that if mold was found in the Property, Defendants Berhe and Zegai would have it professionally remediated, and the repairs documented." (¶ 20).

- "Prior to closing, Defendants, through their agents, further represented that they would retain Gateway Strategies to dry the walls, properly remediate any mold, and properly seal the exterior brick and caulk areas where moisture was detected."[4]  (¶ 21).

- "At that time, Defendants Berhe and Zegai, through their agent(s), represented that the cause of this moisture was the irrigation system spraying certain portions of the exterior of the Property." (¶ 22).

- "On or about June 26, 2021, Separate Defendant Berhe sent a text message stating: 'Positive news, no mold found.' Accompanying this representation was a photograph of the master bedroom showing that baseboard had been removed and fans were drying the area below two windows." (¶ 23).

- "Prior to closing, Defendants' contractor, Gateway Strategies, also represented to the Northcutts that Defendants had 'good news' and that 'everything was going to be fine.'" (¶ 24).

But Plaintiffs offer no particular facts as to how Berhe and Zegai's personal real estate agent, Jim Brandon, was an agent speaking for all "Defendants" when making such alleged statements (Brandon was neither selected nor directed by Weichert) or how Gateway Strategies was "Defendants' contractor" (Weichert was not involved in selecting or hiring Gateway Strategies or directing its work). And finally, the complaint alleges in each cause of action that "Defendants" made various "representations," but, crucially, *not once* does the complaint ever attribute any

---

[4] In support of this allegation, Plaintiffs attach an email from Jim Brandon, Berhe and Zegai's personal real estate agent, addressed to Berhe and a Weichert representative. (Compl., Ex. D). Neither Plaintiff is copied on this email. Brandon is a third party agent unrelated to Weichert. Also, Plaintiffs do not allege that Weichert was involved in the hiring or oversight of Gateway Strategies, because, in fact, Weichert was not involved in such.

representation directly to Weichert. The complaint repeatedly does so for unspecified "Defendants," and for "Defendants Berhe and Zegai," but never for Weichert specifically.

In a case built upon misrepresentations and knowledge about the Home's condition, Weichert is left to guess how and in what instances a representation is being attributed to it. This is particularly problematic in a case where the parties had significantly different roles in the real estate transaction. The separate defendants were not similarly situated, but Plaintiffs, through their vague allegations of collective responsibility, have seemingly grouped Weichert with Berhe and Zegai as if they were. There is no question that the complaint falls well short of informing Weichert of the nature of its involvement in this alleged fraud. For these reasons, the Court should dismiss the complaint against Weichert for failure to satisfy Rule 9(b)'s heightened pleading standard.

## 2. Fraud

Plaintiffs' lack of specific allegations is fatal to its claims against Weichert, but there are yet more reasons why Plaintiffs' fraud claims against Weichert are deficient. The complaint asserts three separate causes of action for fraud: actual fraud (Count 1); constructive fraud (Count 1); and fraud in the inducement (Count 3). Each must be dismissed for three reasons. First, the complaint is devoid of any allegation that Weichert directly made a false representation of fact. Second, Plaintiffs have failed to attribute an independent misrepresentation to Weichert, as agent. Third, Plaintiffs have failed to plead their agency claim with sufficient particularity under Rule 9(b) because Plaintiffs do not allege how Weichert allegedly assisted Berhe and Zegai in making any purported misrepresentations. For each of these reasons, the fraud claims against Weichert must be dismissed.

### a.   Plaintiffs do not allege that Weichert made a false representation of any fact.

Arkansas courts apply the same five elements to all three iterations of fraud: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. *Beatty v. Haggard*, 87 Ark. App. 75, 84-85, 184 S.W.3d 479, 485 (2004) (actual fraud and constructive fraud); *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 255 S.W.3d 424 (2007) (fraud in the inducement). As noted above, Plaintiffs appear to be arguing that "Defendants" made two separate sets of allegedly false representations: (1) pre-inspection misrepresentations and (2) post-inspection misrepresentations. Weichert responds to each in turn.

#### i.      Purported Pre-inspection Misrepresentations

With respect to the purported pre-inspection misrepresentations, the factual basis in the complaint clearly attributes these representations only to Berhe and Zegai. *See* Compl., ¶ 13 ("In the Disclosures, Defendants Berhe and Zegai represented: . . . ."); *Id.* at ¶ 45 ("Defendants Berhe and Zegai represented to the Northcutts in the Disclosure that: . . . ."). As such, the complaint does not purport to directly attribute any pre-inspection misrepresentation to Weichert.

#### ii.     Purported Post-inspection Misrepresentations

Count 1 of the complaint concerns both pre-inspection and post-inspection representations. According to the complaint, the post-inspection misrepresentations are that "the water intrusion issues at the Home were remedied" and "there was no mold in the Home." (Compl. ¶¶ 47, 57). At the outset, it is important to note that the complaint contains no allegation that Weichert represented that the water intrusion issues in the Home were remediated or that there was no mold in the Home. In fact, the complaint does not allege that any party told Plaintiffs that any issues in

17

the Home had been fixed, save for one text message from Berhe. Rather, Plaintiffs allege that they relied on the post-inspection representations outlined above in Section III(B)(1), concerning ¶¶ 19-24 of the complaint. As explained above, and much like Plaintiffs' claims based on purported pre-inspection misrepresentations, Plaintiffs do not attribute any purported post-inspection misrepresentation directly to Weichert. In fact, there is no allegation anywhere in the complaint that Weichert made any representation at all about the Home's condition or otherwise.  This defeats Plaintiffs' fraud claims against Weichert and, as such, those claims should be dismissed for failure to state a claim.

But even assuming Plaintiffs could attribute any of the foregoing post-inspection representations directly to Weichert, these allegations amount to representations about *what would be done in the future* to address the moisture issues under the windows; under Arkansas law, they are not false representations of a material fact because they are forward-looking statements. The Arkansas Supreme Court recently stated the following:

> Projections of future events or conduct cannot support a fraud claim as a matter of law. *Se. Distrib. Co. v. Miller Brewing Co.*, 366 Ark. 560, 575, 237 S.W.3d 63, 74 (2006); *Anthony v. First Nat'l Bank of Magnolia*, 244 Ark. 1015, 1028, 431 S.W.2d 267, 274 (1968) ("Representations that are promissory in nature or of facts that will exist in the future, though false, do not support an action for fraud."). Rather, the misrepresentation "must relate to a past event, or a present circumstance, but not a future event." *P.A.M. Transport, Inc., v. Arkansas Blue Cross & Blue Shield*, 315 Ark. 234, 240, 868 S.W.2d 33, 36 (1993). *See Hobson v. Entergy Arkansas, Inc.*, 2014 Ark. App. 101, at 10, 432 S.W.3d 117, 124 (employer's promises to employee that it would buy the employee's house if he relocated were promises of future events); *Welsher v. Mercy Health Sys. of Nw. Arkansas, Inc.*, 2012 Ark. App. 394, at 4 (hospital's statements to physician that it would engage in certain activities to expand cardiology services were "expressions of aspirations and goals," not statements of material fact). We have, however, recognized an exception to the general rule when the person making the representation knows it to be false at the time it is made. *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 200, 766 S.W.2d 424, 427 (1989).

*Jenkins v. Mercy Hospital Rogers*, 2021 Ark. 211, at *2.

Here, none of the purported post-inspection misrepresentations regarding the moisture issue are misrepresentations of a past event or present circumstance. Rather, these statements merely convey what would be done in the future to address the moisture issues. Even resolving all inferences in Plaintiffs' favor, these statements are, at best, merely promissory in nature of some future fact or events. And Plaintiffs do not allege that any of these statements were made knowing them to be false. As such, these purported post-inspection misrepresentations do not, as a matter of law, support an action for fraud.

The only post-inspection representation that arguably relates to a past event or present circumstance is the allegation that "Defendant Berhe sent a text message stating: 'Positive news, no mold found'" with an alleged picture of the master bedroom. (Compl. ¶ 23). Resolving all inferences in Plaintiffs' favor and accepting this allegation as true, the complaint attributes this purported misrepresentation to Separate Defendant Berhe – not Weichert.

Accordingly, the complaint contains no allegation that Weichert made a post-inspection misrepresentation that all water intrusion issues in the Home had been remediated or that no mold existed in the Home. Therefore, neither pre-inspection nor post-inspection misrepresentations are directly attributed to Weichert, and the fraud claims must be dismissed for failure to state a claim upon which relief can be granted.

### b. Plaintiffs do not allege that Weichert, as an agent, made any *independent* representations beyond those authorized by Berhe and Zegai.

Plaintiffs suggest, at least with respect to Count 1, that Weichert is liable for the purported misrepresentations of Berhe and Zegai under agency principles. Arkansas law will hold a real estate agent responsible for statements made on behalf of its principal only in very limited circumstances. A real estate agent will *not* be held liable for constructive fraud or actual fraud when "his representation to the buyer was only a repetition, in good faith, of a statement authorized

by his principal." *Strout Realty, Inc. v. Burghoff*, 19 Ark. App. 176, 185, 718 S.W.2d 469, 473 (1986) (quoting *Peek v. Meadors*, 255 Ark. 347, 352, 500 S.W.2d 333, 335 (1973)). It follows then that for a real estate agent to be liable, he or she must make a statement or representation *independent of* the statements or representations of the seller. *See id.* (finding real estate agent liable for fraud because the agent made representations about the property's water supply that were independent of representations made by property owner); *see also Marx Real Estate Investments, LLC v. Coloso*, 2011 Ark. App. 426, *16, 384 S.W.3d 595, 604 (affirming dismissal of fraud claim against real estate agent because the plaintiffs failed to show the agent made any representation about the property's condition). That is, an agent cannot be liable merely because a seller is alleged to have made a false representation of a material fact. Indeed, under Arkansas law, a real estate agent cannot be liable as a matter of law for fraud simply because he or she provided a buyer with written disclosures that allegedly contained a misrepresentation related to the property's condition. *Marx Real Estate Investments, LLC*, 2011 Ark. App. at *16, 384 S.W.3d at 604; *Brooks v. Smith*, 215 Ark. 421, 220 S.W.2d 801 (1949) (finding real estate agent could not be held liable for false statement authorized by principal where the agent had no independent knowledge of the veracity of the statement).

Here, the complaint is devoid of any facts that demonstrate Weichert (who was not acting in a typical real estate agent role but was acting in a limited agency capacity in the real estate transaction) made any independent representation or statement about the Home's condition. In fact, as stated above, the only allegations specific to Weichert are the vague assertions that (1) Weichert "assisted and represented" Berhe and Zegai in selling the Home and "negotiated and communicated with potential purchasers" (Compl., Doc. 4, ¶ 8); and (2) Weichert signed the Real Estate Contract and General Addendum on behalf of Berhe and Zegai (*id.* at ¶¶ 11, 19). The

complaint vaguely alleges that Weichert "communicated" with potential purchasers, including Plaintiffs, but falls well short of tethering any purported pre- or post-inspection misrepresentation to Weichert. An agent cannot be liable based solely on the statements or representations of his or her principal – there must be some independent conduct by the agent to render him or her culpable for those statements. In this case, the complaint fails to offer any plausible allegation as to how Weichert is somehow responsible for Berhe and Zegai's purported misrepresentations.

The Contract makes the opposite clear. Weichert explained to Plaintiffs that it was not making (and, in fact, could not make) any representation about the accuracy or completeness of Berhe and Zegai's Disclosures. Weichert could not have "assisted" Berhe and Zegai in making any purported misrepresentations because it disclaimed any independent knowledge about the contents of their disclosures.

For these reasons, the Court should dismiss Plaintiffs' fraud claims against Weichert premised on agent liability.

### c. Plaintiffs' failure to allege how Weichert "assisted" Berhe and Zegai in making the purported misrepresentations violates the Rule 9(b) pleading standard.

Separately, even if Plaintiffs were able to state a claim against Weichert in its agent capacity under the less onerous Rule 8 standard, they do not come close to satisfying Rule 9(b)'s heightened pleading standard because the complaint contains no facts that show the *who, what, when, where and how* Weichert allegedly assisted Plaintiffs in making the purported misrepresentations. *See Burnett v. Am. Int'l Indus.*, 2020 WL 6276146 at *2. The complaint only alleges in passing that Weichert negotiated and communicated with potential purchasers and that Weichert signed the Real Estate Contract and General Addendum on behalf of Berhe and Zegai. Plaintiffs offer no particular facts or allegations that tie Weichert to any pre- or post-inspection representation. A complaint must do more than tender naked assertions devoid of further factual

enhancement, and conclusory statements should be disregarded. *See Butterball, LLC v. Atkinson*, 2016 WL 5886891 at *1. But that is all Plaintiffs have done—there are no facts that come close to plausibly showing how Weichert "assisted" Berhe and Zegai in making any misrepresentations. Weichert is simply left to guess or speculate how it did so. Therefore, the Court must dismiss Plaintiffs' fraud claims against Weichert premised on agent liability.

### 3.  Mutual Mistake

As an alternative to their claim for rescission based on actual or constructive fraud, at Count 2 Plaintiffs seek to rescind the contract based on a mutual mistake between the parties. Under Arkansas law, a real estate contract may be rescinded for mutual mistake, *Carter v. Matthews*, 288 Ark. 37, 701 S.W.2d 374 (1986), but, understandably, it requires a mistake common to both parties. *Mitchell v. First Nat'l Bank in Stuttgart*, 293 Ark. 558, 560, 739 S.W.2d 682, 683 (1987). Importantly, and similar to claims of misrepresentation, "[b]efore a mutual mistake will affect the binding force of a contract, the mistake must be of an existing or past material fact which is the basis of the contract." *Id.* (citation omitted); *Jewell v. McElhaney*, 1994 WL 202445, at *2 (Ark. Ct. App. May 18, 1994). Additionally, "[i]t must appear further that the mistake involved a fact material to the inducement to the making of the contract." *Baugh v. Johnson*, 6 Ark. App. 308, 641 S.W.2d 730 (1982).

Plaintiffs' claim based on mutual mistake fails as a matter of law for two reasons. First, the purported mistake, as alleged, could not have been material to the inducement of the making of the parties' Contract. Rather, the purported mistake was, at best, material to Plaintiffs' decision not to re-inspect the Home, which occurred well after the parties executed the Contract. Second, any purported mistake about the Home's condition that would support a claim for rescission could not have been mutual because Weichert disclaimed any knowledge about the Home's condition when the parties executed the Contract.

22

<strong>a. The purported mistake could not have been material to the inducement to the making of the contract.</strong>

According to Plaintiffs, the purported mistake was that "the Property's water intrusion issues were resolved and that there was no mold in the Property." (Compl., ¶ 70). Plaintiffs claim that they "*would not have entered into the Contract* but for their understanding that *all water intrusion issues were resolved and that there was no mold growth in the Property*." (*Id.* at ¶ 69) (footnote omitted) (emphasis added). However, any notion that Plaintiffs "would not have entered into the Contract" but for this purported mistake is belied by Plaintiffs' other factual allegations.

For example, neither Weichert nor Plaintiffs knew of the moisture issues around the windows until *after* the inspection, which occurred *after* the parties signed the Contract. The General Addendum, which addressed the water intrusion and potential mold issues around the windows, was executed *after* the inspection. There is no question that the parties had already entered into the Contract before they signed the General Addendum (an addendum is, of course, an addition to an existing contract). And the mistake, as Plaintiffs have alleged it, is that the parties were mistaken that the repairs in the General Addendum had been completed. Such a purported mistake, if any, could not have materialized until well *after* the parties executed the Contract. Accordingly, the purported mistake, as alleged, could not have been material to its inducement.

The more appropriate characterization of Plaintiffs' mutual mistake claim is that Plaintiffs would have re-inspected the property but for the purported mistake. When Plaintiffs submitted the offer to Berhe and Zegai, they elected the following:

> B. Buyer shall have the right, at Buyer's expense, with the cooperation of Seller, to inspect the electrical, mechanical, plumbing, environmental conditions, appliances, and all improvements, structure(s) and components on or about the Property (collectively the "Inspection Items") within TEN (10) BUSINESS DAYS after the date this Real Estate Contract is accepted. Seller, Listing Firm and Selling Firm recommend Buyer use a representative chosen by Buyer to inspect Inspection Items. **Buyer is not relying on Listing Firm or Selling Firm to choose a representative to**

23

> **inspect or re-inspect Inspection Items; Buyer understands any representative desired by Buyer may inspect or re-inspect Inspection Items.** . . . The fact any or all Inspection Items may cease to be in normal working order, be discovered or occur, after Closing, shall not require repair by Seller, or provide legal or other liability to Seller, Listing Firm, or Selling Firm.

(Compl., Ex A., p. 7).  The Contract further provided:

> If Buyer is not satisfied with a personal or professional inspection and elects to terminate this Real Estate Contract, both Buyer and Seller agree to sign a Termination of Contract Addendum with Buyer to recover Earnest Money. If Buyer requests repairs, Seller shall have (5) business days to respond to the Buyer's repair request. If Seller does not response within the allotted (5) business days, Buyer may elect to (1) accept Property in its condition at Closing, or (2) terminate this Real Estate Contract and recover Earnest Money and both Buyer and Seller agree to sign a Termination of Contract Addendum.

> If Buyer and Seller are not able to negotiate requested repairs, Buyer and Seller agree this Real Estate Contract is terminated and further agree to sign a Termination of Contract Addendum. . . .

> If Buyer timely inspected Property and Seller received the Inspection, Repair and Survey Addendum within the time period set forth above, Buyer shall have the right to re-inspect all Inspection Items prior to Closing to ascertain whether Inspection Items are in normal working order and to determine whether all requested and accepted repairs have been made. If Inspection Items are found not to be in normal working order upon re-inspection, Buyer may elect to (1) accept Property in its condition at Closing, or (2) terminate this Real Estate Contract and recover the Earnest Money and, in the event termination is elected, both Buyer and Seller agree to sign a Termination of Contract Addendum.

(*Id.*).

These provisions make clear that the parties had already entered into a Contract once the moisture issues were discovered.[5]  Thus, any mistake on the part of Plaintiffs related to the

---

[5] Plaintiffs seem to concede this point. Plaintiffs' fraud in the inducement claim at Count 3 is based only on the purported pre-inspection misrepresentations. Presumably, Plaintiffs do not claim that the post-inspection representations induced them into signing the contract because, at the time the purported post-inspection representations were made, the parties had already entered into the Contract.

remediation of the moisture issues could not have been material to the inducement of the Contract; rather, the purported mistake would have been material to their decision not to re-inspect the property (and, by extension, potentially terminate the Contract). Such a mistake is not the type that will justify rescission of the Real Estate Contract. Therefore, the Court should dismiss Plaintiffs' mutual mistake claim against Weichert for failure to state a claim upon which relief can be granted.

### b. Weichert could not have been mistaken about a material fact because it disclaimed all knowledge about the Home's condition.

Separately, any purported mistake premised on the Home's condition could not have been mutual. The purported mistake Plaintiffs have alleged here relates to the Home's condition. But when the parties executed the Contract, Weichert made clear that it had no knowledge about the Home's condition, both before and after any necessary repairs. Weichert could not have been mistaken about a fact of which it had no knowledge. Even if Plaintiffs were mistaken as they have alleged, the mistake was not (and could not have been) mutual. Therefore, the Court should dismiss Plaintiffs' claim for mutual mistake against Weichert for failure to state a claim upon which relief can be granted.

## IV.    CONCLUSION

Weichert should never have been named a defendant in this case. Plaintiffs rushed to close on this Home purchase a mere 15 days after the parties signed the Contract. This does not make them victims of fraud, and it certainly does not make Weichert guilty of perpetrating a fraud. Plaintiffs' decision to omit Weichert's Disclosures from their complaint—despite including and relying on Berhe and Zegai's Disclosures and the rest of the Real Estate Contract—is not a valid reason to force Weichert to remain a party to this lawsuit and bear the burden and expense of discovery. The complaint does not, and cannot, allege that Weichert made any misrepresentation, nor does it contain any factual allegations demonstrating how Weichert purportedly assisted Berhe

and Zegai in making any misrepresentation. Weichert's role in the real estate transaction was limited and explicitly removed Weichert from any disputes over the condition of or repairs to the Home. Plaintiffs' allegations are insufficient to support their claims against Weichert. The Court should therefore grant Weichert's motion for judgment on the pleadings and dismiss Plaintiffs' complaint against Weichert in its entirety.

Respectfully submitted,

ROSE LAW FIRM, P.A.

By: /s/ Adam L. Hopkins
    Adam L. Hopkins, AR #2006282
    Ryan J. Smith, AR 2018192
    240 N. Block Street, Suite A
    Fayetteville, AR 72701
    (479) 856-6081
    ahopkins@roselawfirm.com
    rsmith@roselawfirm.com

    *Attorneys for Defendant Weichert*
    *Workforce Mobility Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing document was served via the Court's electronic filing system upon all registered attorneys of record on the date indicated thereby.

By: /s/ Adam L. Hopkins
    Adam L. Hopkins